IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| FERMAN S. CHEATHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-cv-743-ALB |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a motion by Certain Underwriters at Lloyd's, London and Tim Parkman, Inc. ("Defendants") to dismiss Counts V (breach of contract), VI (bad faith), VII (negligence), and VIII (wantonness) of the complaint brought against them by Ferman Cheatham ("Plaintiff"). (Doc. 27). Upon consideration, Defendant's motion is due to be DENIED.

## BACKGROUND

In January of 2017, a home in Eclectic, Alabama that was owned by Ferman Cheatham Jr. was damaged by fire. Cheatham was incarcerated at the time. JPMorgan had a mortgage on the property. Cheatham had insured the home with Certain Underwriters at Lloyd's, London. The Underwriters, after a brief investigation, determined that they owed Cheatham compensation for the fire

damage. The Underwriters issued Cheatham a check in October of 2017 for $114,268.61, which was made payable to both him and JPMorgan in accordance with the Mortgage Clause in the Underwriters' policy.

Cheatham alleges that JPMorgan had already foreclosed on the property in August and received enough money to satisfy its mortgage. Cheatham informed the Underwriters of this development before the check issued. When Cheatham asked the Underwriters to reissue the check only to him, he was told to send the check to JPMorgan and ask them to endorse it over to him. JPMorgan refused and withheld the funds from Cheatham, who then decided to sue the Underwriters for mishandling his check negligently and wantonly as well as bad faith and a breach of the insurance contract.

## **STANDARD**

When considering a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). There are two questions a court must answer before dismissing a complaint. First, the court must ask whether there are allegations that are no more than conclusions. If there are, they are discarded. Second, the court must ask whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If

there are none, the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## **DISCUSSION**

Plaintiff argues that Defendants gave his insurance proceeds to JPMorgan instead of him in violation of the insurance contract and contrary to his specific instructions. Defendants respond that they simply followed Plaintiff's directions on a document that he submitted to them—a proof of loss form—and cannot be liable for following those directions.

The main issue for the Court is whether the proof of loss document can be considered on Defendants' motion to dismiss. In the Eleventh Circuit, a court may consider an extrinsic document when its authenticity is not questioned, and it is central to a plaintiff's claims. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) (holding that such extrinsic evidence can be considered at the motion to dismiss stage if the above factors are met and even if it is not mentioned in or attached to the complaint). Plaintiff has not contested the authenticity of the document either in his reply brief or in conference with the Court.

The element of centrality, however, has been contested. To be adequately central, an extrinsic document must be part of the reason a plaintiff believes he was wronged. The document must be a "necessary part of [the] effort to make out a claim." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). *See also Horsley v.*

3

*Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) (holding that the news article that the defamatory statement appeared in was central to a defamation claim.); *Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199, 1204 (S.D. Fla. 2013) (holding that documents that were "not mentioned in the complaint, do not form the basis of Plaintiffs' claim, and are not relied upon [by] Plaintiffs in any respect" would not be considered central); *Botero v. South Florida Pain & Rehabilitation Center Corp., Inc.,* 2012 WL 3614329, at *3 (S.D. Fla. Aug. 21, 2012) (holding that Courts ought to consider whether the claims depend on the documents).

The proof of loss document adduced by Defendants does not meet that standard. The document is not mentioned in the complaint, is not used as a basis for any claims, and was not relied upon by Plaintiff to infer that he had been wronged. Plaintiff alleges that Defendants wrongfully gave his property to a third party despite his communications advising them of the disposition of his mortgage, his requests for check reissue, and the text of the contract. Plaintiff alleges he told Defendants that his mortgage was satisfied before the check was issued and, per the insurance contract, they should have issued it only to him. These claims do not rely on Defendants' receipt of the proof of loss or its contents. The proof of loss document may ultimately provide a *defense* to Plaintiff's claim, but that is not the same thing as saying that the document is central to the claim itself. *See, e.g., Humphrey v. City of Headland*, 2012 WL 2568206, at *1 (M.D. Ala. July 2, 2012) (when a document

4

"is not central to the Plaintiffs' claims, but is central, instead, to the Defendants' proposed defenses to liability . . . the court will not consider the contents of the Defendants' proposed exhibit.")

Defendants have pointed the Court to *Frontier Nat'l Corp. v. St. Paul Mercury Ins. Co.*, 2015 WL 12747660, at *3 (N.D. Ala. Mar. 23, 2015), but it is inapposite. In *Frontier*, the proof of loss was part of the bank's claim against the insurer, not a document that merely provides a defense to a plaintiff's claim. There, a bank sued an insurer for breach of an insurance contract for failing to pay a claim despite the bank's statement of loss. The bank alleged that the insurance company was delaying payment in the hopes that the bank might fail and the successor would not pursue the claim. According to the complaint, the bank suspected something was amiss when it met with an insurance agent who claimed not to know that the bank had submitted a statement of loss. In this case, unlike in *Frontier*, Plaintiff's claim does not rely on the proof of loss document. For that reason, the Court cannot consider the proof of loss at this stage of the proceedings.

## **CONCLUSION**

Accordingly, Defendants' motion to dismiss (Doc. 27) is **DENIED**.

**DONE** and **ORDERED** this 2nd day of March, 2020.

/s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE